IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CORTEZ WOOTEN,

Petitioner,

v.                                                                          No. 13-1335-DRH

UNITED STATES OF AMERICA,

Respondent.

MEMORANADUM and ORDER

HERNDON, District Judge:

I. Introduction and Background

This matter is before the Court on Wooten's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Docs. 1 & 8). The government opposes the motion (Doc. 7). Based on the following, the Court denies Wooten's petition. Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter. It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *Cooper v. United States,* 378 F.3d 638, 641–42 (7th Cir. 2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing).

Wooten was convicted, after a second jury trial, of possession with intent to

distribute over 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). *United States v.* Wooten, 10-CR-30088-DRH, Docs. 86, 97 & 89. Thereafter, the Court sentenced Wooten to a term of life imprisonment on July 8, 2011. *Id.* at Docs. 98 & 101. Wooten filed a direct appeal of his sentence and conviction. *Id.* at Doc. 103. Wooten raised three issues on appeal: (1) he challenged the sufficiency of the evidence presented by the government to prove that he intended to distribute crack; (2) he argued that the district court erred in admitting evidence of his prior conviction for distributing crack under Federal Rule of Evidence 404(b); and (3) he argued that the district court erred in concluding that he cannot benefit from the lower mandatory minimums established by the Fair Sentencing Act ("FSA"). *See Id.* at Doc. 129. The Seventh Circuit affirmed Wooten's conviction, but in light of *Dorsey v. United States*, 132 S.Ct. 2321 (2012), vacated his sentence and remanded for resentencing. On remand, the Court sentenced Wooten to 360 months in prison in accordance with the FSA on November 12, 2012. *Id.* at Docs. 136 & 137.

The Seventh Circuit succinctly summarized the extensive facts of this case, as reproduced below:

> Cortez Wooten was sitting in the passenger seat of a car driven by his girlfriend when a deputy U.S. Marshal recognized him as having an outstanding warrant for his arrest. After arresting him, officers searched Wooten, his girlfriend, and the car; they found 51.2 grams of crack cocaine, a digital scale, and $159 in small bills. Wooten asserted that he stole the scale and drugs the night before and that he intended only to smoke the crack. He was charged with possessing crack with the intent to distribute, 21 U.S.C. § 841(a)(1), and after a hung jury at his first trial, a second jury found him guilty and returned

a special verdict holding him responsible for at least 50 grams of crack. Because of the drug quantity and Wooten's prior drug convictions, the district court imposed a mandatory term of life imprisonment on the understanding that the Fair Sentencing Act of 2010, 124 Stat. 2372, was not retroactive. On appeal he argues that the FSA is applicable and would have reduced his sentence, that the evidence presented at trial was insufficient for a rational jury to find him guilty, and that the district court erred in admitting evidence of his prior conviction for distributing crack in 1998. We affirm Wooten's conviction, but in light of *Dorsey v. United States*, 132 S.Ct. 231 (2012), we vacate his sentence and remand for resentencing.

At trial both sides framed the primary issue as whether Wooten intended to distribute the drugs found in his pocket. The prosecution emphasized that a common-sense evaluation of the evidence found on Wooten, his videotaped interrogation, and testimony from his former cellmate would lead the jury to find him guilty. Wooten's attorney then set out the defense's primary theme at trial: that he was an addict who stole the drugs and intended only to consume them, and that the government could not adequately prove otherwise. In their opening statements neither side mentioned Wooten's prior conviction.

The government called two of the arresting officers, Deputy U.S. Marshal Dave Davis and police officer Keith Howard, who were working together as part of a task force. Davis and Howard testified that they were parked in their squad car in East St. Louis when Davis saw Wooten riding in the passenger seat of a passing car. Davis recognized Wooten from an investigation that led to Wooten's prior drug arrest in 1998 and knew that an arrest warrant was outstanding for Wooten. They followed the car until the driver parked; Howard then approached the vehicle to make the arrest. As he approached the car, Howard could see money fanned across Wooten's lap. While Howard put him in handcuffs, Wooten said, "I've got dope on me." He did not appear to be under the influence of drugs. Howard testified that he searched Wooten and found in his pockets the digital scale and the lump of crack weighing 51.2 grams, along with $159 in small bills on his lap. The officers also testified that a search of Wooten's girlfriend and the car revealed no further evidence; they did not find a crack pipe, lighter, or other drug paraphernalia. There was a bit of uncertainty about the girlfriend's purse: Davis testified that it had been searched, though Howard did not recall seeing a purse.

Howard then took Wooten to the Illinois State Police headquarters in Collinsville, Illinois, for questioning, where they were joined by Officer Dave Kitley. An audio and video recording of this

interview was introduced at trial. Wooten first asserted that he stole the drugs and scale from an unlocked car the night before, that he was addicted to crack, and that he intended to smoke the drugs. When pressed, however, Wooten reluctantly told the officers that he was unemployed, that he needed money, and that he had been willing to sell some of the crack. When Officer Kitley said, "You just told me you were trying to get some money for your kids. For her kids, right?" Wooten responded, "Okay, bro, I smoke crack, I try to hustle." When Officer Howard asked, "Were you going to pinch a little for yourself and then try and make some money?" Wooten replied, "Bro, I'm gonna take it however it come…. I mean I am gonna smoke some, I'm gonna make some money, however, I gotta do it bro." Wooten emphasized this point: "[L]ike I told you, I get high. I ain't just saying I'm just gonna go out here and hustle some shit bro…. I'm gonna take care of my habit first, bro, and if there's some money to be made, I'm gonna make some, bro."

  DEA special agent Mike Rehg provided expert testimony regarding crack use and distribution in East St. Louis. Agent Rehg testified that the quantity of crack found on Wooten could have brought him $1,800 to $5,100 depending on the manner of sale, and that this quantity is more commonly found on dealers than on addicts: A typical addict might consume about one gram a day, so 51.2 grams could last an ordinary user several weeks. He also testified that users typically have drug paraphernalia with them, as crack cannot be ingested without a pipe and a heat source. Dealers, in contrast, usually have access to a scale, and because the drug is commonly sold in small doses of .1 or .2 gram costing $10 or $20, deals will carry currency in small bills.

  The government also introduced evidence concerning Wooten's conviction for distributing crack in 1998. Deputy Marshal Davis testified that he participated in the drug investigation into Wooten in 1998. Davis did not discuss the details of that investigation, however, as defense counsel successfully argued that allowing Davis to discuss the investigation in detail would be cumulative of testimony that the government planned to elicit later in the trial. Those details came out later when, following a limiting instruction cautioning the jury that it could consider Wooten's conviction only as proof of intent or motive, former police officer Jason Bridges testified that in 1998 he participated in a drug investigation into Wooten and twice watched him sell about 3 grams of crack to an informant. The prosecution then introduced a certified copy of Wooten's conviction. His former probation officer also testified concerning that past conviction, and said among other things that Wooten's supervised release was revoked

after he tested positive for marijuana several times, that he was diagnosed by a drug treatment center as being "dependent" on marijuana, and that he confided to her that he never used crack. Wooten never objected to Bridges's or his probation officer's testimony, or to the introduction of the conviction record.

Finally, the government presented testimony from Wooten's former cellmate at the Fayette County jail, Marzell Travis, who admitted that he was cooperating in order to receive a reduced sentence. Travis, who did not testify at Wooten's first trial, explained that in November 2010 he came forward with information about Wooten because he was dissatisfied with his sentence. Travis said that, before he approached the authorities, Wooten had confessed in a jailhouse conversation that he bought the crack the day before his arrest and was on his way to sell it when he was caught. Travis also testified that in jail he and Wooten had smoked marijuana that Wooten had smuggled in through a straw wedged into a hole in the visitor's-room window.

As promised in his opening statement, defense counsel corss-examined the government's witnesses and called three witnesses of his own in trying to pain Wooten as a crack addict who stole the drugs solely for his own personal consumption. Wooten did not testify. To impeach Marzell Travis's testimony, he called the administrator of the Fayette County jail to testify that it would have been impossible for someone to have smuggled marijuana into the jail through the visitor's-room window and that no one ever had been caught with marijuana in the jail. Carolyn Lott, the mother of Wooten's two children, testified that she and Wooten had smoked crack together several times when they were dating in the early 1990s, though she had spoken to him only once since 1995. Finally, Wooten's sister testified that she knew he smoked marijuana and suspected, but could not be certain, that he also had started smoking crack.

The jury returned a verdict of guilty and a special verdict finding that Wooten intended to distribute 50 or more grams of crack.

*Id*. at Doc. 129. During the second trial, sentencing, appeal and resentencing, Wooten was represented by attorney, Rodney Holmes.

On December 26, 2013, Wooten filed this § 2255 motion (Doc. 1). Wooten raised three claims of ineffective assistance of counsel by Mr. Holmes: (1) counsel

was ineffective for failing to object to evidence related to Wooten's prior drug conviction; (2) counsel was ineffective for failure to prepare a defense and properly investigate and examine witnesses; and (3) counsel was ineffective for failing to withdraw as his attorney on appeal and for failing to object to the government's introduction of 404(b) evidence of the prior drug conviction at trial. As the petition/motion is ripe, the Court turns to address the merits.

## II. 28 U.S.C. § 2255 Standard

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under Section 2255, relief "is available when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum allowed by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008)(quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)(Section 2255 motion is "neither recapitulation of nor a substitute for a direct appeal.") (citation omitted). As such, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval*

*v. United States*, 574 F.3d 847, 850-51 (7th Cir. 2009); *Torzala*, 545 F.3d at 522.

Because claims of ineffective assistance of counsel usually involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003), *United States v. James*, 635 F.3d 909, 916 (7th Cir. 2011). Petitioner bears a heavy burden to establish ineffective assistance of counsel. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). These claims are evaluated under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007)(ciing *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)). Petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the petitioner in such a way that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 695. The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong is fatal to the claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

To show that counsel's performance fell below an objective standard of reasonableness, a petitioner must identify "acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons v.*

*United States*, 639 F.3d 348, 351 (7th Cir. 2011). To meet the prejudice prong, a petitioner need only show a reasonable probability that counsel's conduct altered the outcome, or, in other words, a probability sufficient to undermine confidence in the outcome. *McElvaney v. Pollard*, 735 F.3d 528, 533 (7th Cir. 2013).

### III. Analysis

First, Wooten argues that counsel was ineffective by failing to object to the admission of his prior drug conviction pursuant to 404(b). As stated before and noted by the Seventh Circuit, Holmes represented Wooten in his second trial. Wooten's counsel, in his first trial, did object to the admission of this type of evidence and the Court held that evidence of his prior drug conviction could be introduced pursuant to 404(b). Holmes averred that he did not renew the objection to the evidence in the second trial because he felt that Court would rule the same as it did in the first trial (Doc. 7-1). Instead, Holmes moved for a limiting instruction. The Court allowed a limiting instruction which required the jury to only consider the evidence of the prior conviction for the purposes of Wooten's intent or motive in possessing the crack cocaine at issue in this matter. The Court gave the limiting instruction during trial and at the conclusion of the case. Moreover, on appeal, the Seventh Circuit affirmed the introduction of the evidence and the use of the limiting instruction: "These limiting instructions minimized any prejudice to Wooten." *Wooten*, 10-CR-30088-DRH; Doc. 129. Thus, Holmes acted reasonably in requesting a limiting instruction and in not making a new separate objection. The Court finds that Wooten failed to meet either prong under

*Strickland*.

Next, Wooten argues that Holmes was ineffective by failing to prepare a defense and cross-examine witnesses. Specifically, Wooten maintains that counsel was ineffective for failing to adequately prepare or conduct a reasonable investigation and for failing to call Douglas Mattix to testify about his drug use. The Court rejects this argument as the record suggests the opposite. Upon review of the trial transcript, it is clear that counsel vigorously represented his client in the face of the overwhelming evidence against him, as demonstrated by counsel's thorough examination of witnesses, cross-examination of witnesses, objections to evidence and closing arguments. Likewise, the Seventh Circuit noted: "defense counsel cross-examined the government's witnesses and called three witness of his own trying to paint Wooten as a crack addict who stole the drugs solely for his own personal consumption." *Id.* During trial, counsel utilized Ms. Lott and Ms. Holton, Wooten's sister, to testify about his drug use and utilized the administrator of the Fayette County jail to testify that it would have been impossible for someone to smuggle marijuana into the jail. "[A] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997); *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990)("The Constitution does not oblige counsel to present each and every witness suggested to him. In fact, such tactics would be considered dilatory unless the attorney and the court believe the witness will add competent, admissible and non-cumulative testimony to the trial record."). Wooten failed to

provide any specific facts or omissions that would overcome this Court's presumption that counsel was effective, and failed to show that counsel's assistance fell below an objective standard of reasonableness, or that he was prejudiced as a result. Wooten has provided no basis for the Court to conclude that the result of the proceedings would have been different but for counsel's deficient performance.

Lastly, Wooten contends that Holmes was ineffective for failing to withdraw as counsel on appeal and for failing to object to the government's introduction of 404(b) evidence of the prior drug conviction. Again, the Court rejects this argument as the record reflects otherwise. As noted by the Seventh Circuit, Wooten, through Holmes, did raise this issue on appeal: "Wooten focuses exclusively on the prejudice stemming from this evidence." *Wooten*, 10-CR-30088-DRH; Doc. 129. As to this issue, the Seventh Circuit held:

> The district court did not plainly err in admitting evidence of Wooten's conviction for distributing crack in 1998. His prior conviction was relevant to the primary question at his trial – whether he intended to sell or consume the crack in his possession. *See, e.g., Baker,* 655 F.3d at 682; *United States v. Powell*, 652 F.3d 702, 706-07 (7th Cir. 2011); *United States v. Bolig*, 648 F.3d 474, 479 (7th Cir. 2011); *United States v. Perkins*, 548 F.3d 510, 514-15 (7th Cir. 2008); *United States v. Hurn*, 496 F.3d 784, 787-88 (7th Cir. 2007); *Jones*, 455 F.3d at 808. Wooten contends only that the risk of unfair prejudice substantially outweighs any probative value of the evidence, and that the jury must have drawn the prohibited "once a drug dealer, always a drug dealer" inference. *See United States v. Miller*, 673 F.3d 688, 698-700 (7th Cir. 2012). But we are unconvinced that this evidence was so prejudicial as to call its admission plain error. The district court instructed the jury during the prosecution's case-in-chief and in the jury instructions that it could only consider Wooten's prior conviction for its value in determining Wooten's intent or motive in possessing the crack. These limiting instructions minimized any prejudice to Wooten. *See United States v. Chambers*, 642 F.3d 588,

595-96 (7th Cir. 2011); *Jones*, 455 F.3d at 809.

*Id*. at Doc. 129. Clearly, Holmes addressed this issue on appeal and he cannot be faulted for raising an issue that he did raise. His performance as appellate counsel was not deficient. The Court finds that Wooten failed to meet either prong under *Strickland*.

The Court concludes that Wooten's claims that his counsel was ineffective are without merit. Wooten's attorney was not ineffective in representing Wooten in this criminal matter. In fact, the Court concludes that Mr. Holmes' actions were reasonable and sound in light of the circumstances.

While Wooten may think that his sentence is harsh; his sentence and conviction are legal. He has not shown that his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Thus, the Court rejects Wooten's 28 U.S.C. § 2255 petition/motion. Finally, the Court notes that letting Wooten's conviction and sentence stand would not result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability

pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval,* 574 F.3d at 852. A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Where a district court denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

As to petitioner's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of petitioner's claim. Reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of ineffective assistance of counsel do not present evidence of constitutionally deficient attorney

performance; nor do they demonstrate resulting prejudice. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## IV. Conclusion

Accordingly, the Court **DENIES** Wooten's motion under 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence by person in federal custody. The Court **DISMISSES with prejudice** this cause of action. The Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same. Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 24th day of October, 2014.

Digitally signed by
David R. Herndon
Date: 2014.10.24
09:58:00 -05'00'

**United States District Court**